AO 441 (Rev. 12/09) Summons on Third-Party Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| | | |
|---|---|---|
| Ralph S. Janvey, et al | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 3:10-cv-527 |
| Ben Barnes (D); Ben Barnes Group, L.P. (3-PP) | ) | |
| *Defendant, Third-party plaintiff* | ) | |
| v. | ) | |
| Chesapeake Enterprises, Inc. | ) | |
| *Third-party defendant* | ) | |

## SUMMONS ON A THIRD-PARTY COMPLAINT

To: *(Third-party defendant's name and address)*    Chesapeake Enterprises, Inc.
Wayne Berman, Agent
2055 Whitehaven St. N.W.
Washington, D.C. 20008

A lawsuit has been filed against defendant ___Ben Barnes Group, L.P.___, who as third-party plaintiff is making this claim against you to pay part or all of what the defendant may owe to the plaintiff ___Ralph S. Janvey, et al___.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(3) — you must serve on the plaintiff and on the defendant an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the defendant or defendant's attorney, whose name and address are:

Jay J. Madrid, Esq., Kristen L. Sherwin, Esq., WINSTEAD PC, 1201 Elm Street, Suite 5400, Dallas, Texas 75270, Phone: 214-745-5400; Facsimile: 214-745-5390.

It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

See attachment

If you fail to respond, judgment by default will be entered against you for the relief demanded in the third-party complaint. You also must file the answer or motion with the court and serve it on any other parties.

A copy of the plaintiff's complaint is also attached. You may – but are not required to – respond to it.

Date:    ___07/12/2012___

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Peter D. Morgenstern, Esq.
Butzel Long, PC
380 Madison Ave., 22nd Fl.
New York, N.Y. 10217
Morgenstern@butzel.com
212-818-1110
212-818-0494 (Facsimile)

Edward C. Snyder, Esq.
Castillo Snyder, P.C.
Bank of America Pl., Suite 1020
300 Convent St.
San Antonio, Texas 78205
esnyder@casnlaw.com
210-630-4200
210-630-4210 (Facsimile)

Edward F. Valdespino, Esq.
Strasburger & Price, LLP
300 Convent St., Suite 900
San Antonio, Texas 78205
Edward.valdespino@strasburger.com
210-250-6061
210-258-2703 (Facsimile)

Nicholas A. Foley, Esq.
Neligan Foley, LLP
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
nfoley@neliganlaw.com
214-840-5320
214-840-5301 (Facsimile)

ATTORNEYS FOR THE OFFICIAL STANFORD INVESTORS COMMITTEE

Kevin M. Sadler, Esq.
Baker Botts L.L.P.
1500 San Jacinto Center
98 San Jacinto Blvd.
Austin, Texas 78701-4039
Kevin.sadler@bakerbotts.com
512-322-2500
512-322-2501 (Facsimile)

ATTORNEYS FOR RECEIVER RALPH S. JANVEY

AO 441 (Rev. 12/09) Summons on Third-Party Complaint (Page 2)

Civil Action No.   3:10-cv-527

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                     *Server's signature*

                                            _____
                                                     *Printed name and title*

                                            _____
                                                     *Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., and and THE OFFICIAL STANFORD INVESTORS COMMITTEE | § § § § § § § | |
| Plaintiff, | § § | Civil Action No. 3:10-cv-527 |
| v. | § § | |
| BEN BARNES AND BEN BARNES GROUP, L.P, | § § | |
| Defendants. | § | **JURY TRIAL DEMANDED** |

## BEN BARNES GROUP, L.P.'S ANSWER TO FIRST AMENDED COMPLAINT AND RESTATED THIRD-PARTY COMPLAINT

Defendant Ben Barnes Group, L.P. ("BBG, L.P.") submits the following answer and defenses to the First Amended Complaint (the "Complaint") filed by Plaintiffs Ralph S. Janvey, in his capacity as court-appointed receiver for the Stanford International Bank, Ltd., (the "Receiver") and The Official Stanford Investors Committee (the "Committee") (collectively "Plaintiffs") and BBG, L.P.'s Restated Third-Party Complaint.[1]

## ANSWER

### SUMMARY

1.    BBG, L.P. admits that Receiver has been appointed by this Honorable Court and that his duties are delineated in appropriate orders related to his appointment. BBG, L.P. admits that this Court has approved an agreement giving the Committee responsibility for litigating

---

[1]   BBG, L.P. restates its Third-Party Complaint so that the Third-Party Complaint includes information about the newly added Plaintiff, The Official Stanford Investors Committee, as well as the original Plaintiff, Ralph S. Janvey, in his capacity as court-appointed receiver for the Stanford International Bank, Ltd. The Third-Party Complaint has only been changed to refer to Plaintiffs, instead of just Plaintiff or Receiver.

claims asserted in this action.  BBG, L.P. lacks sufficient information or knowledge to admit or deny the remaining allegations of fact contained in Paragraph 1 of the Complaint and therefore denies them.

2.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 2 of the Complaint and therefore denies them.

3.    BBG, L.P. admits that it is a consulting group founded by Ben Barnes ("Barnes"). BBG, L.P. admits that from about 2005 to 2009, it was paid approximately $5.1 million by various Stanford entities for consulting work performed by BBG, L.P. and its agents, of which BBG, L.P. exercised no dominion or control over approximately $1.3 million as the money was owed to third-party consultants who performed work on behalf of the Stanford entities through BBG, L.P.  BBG, L.P. denies that any payments were made to Barnes in his individual capacity by any of the Stanford Parties (as defined in Complaint).  BBG, L.P. lacks sufficient information or knowledge to admit or deny the Receiver's allegations in sentence 3 of Paragraph 3 of the Complaint related to the source of the funds paid to BBG, L.P. and BBG, L.P. admits that on occasion payments were apparently made to BBG, L.P. by R. Allen Stanford personally, but the consulting work done by BBG, L.P. was done on behalf of various Stanford related entities, and not Mr. Stanford, personally.  BBG, L.P. admits that the Receiver seeks a return of funds allegedly paid to Barnes and BBG, L.P., but lacks sufficient knowledge or information to admit or deny the purpose for which the Receiver seeks such return.  BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in sentence 5 of Paragraph 3 of the Complaint and therefore denies them.

4.    BBG, L.P. admits that starting in approximately 2005, BBG, L.P. began providing consulting services for various Stanford entities.  BBG, L.P. denies that Barnes performed any

work for various Stanford entities in his individual capacity – all work done by Barnes was in his capacity as principal and as an employee of BBG, L.P.  BBG, L.P. admits that BBG, L.P. and/or third-party vendors were paid for such lobbying and consulting services.  BBG, L.P. denies that Barnes, individually, received any payment from the Stanford Parties.  BBG, L.P. lacks sufficient information or knowledge to admit or deny the remaining allegations of fact contained in Paragraph 4 and therefore denies them.  At all times the Stanford Parties represented themselves to BBG, L.P. to be legitimate businesses with no suggestion that they were involved in illegal or improper activities.

5.      BBG, L.P. denies that Barnes performed any work for the Stanford Parties in his individual capacity – all work done by Barnes was in his capacity as principal and as an employee of BBG, L.P.  BBG, L.P. admits that BBG, L.P.'s work for the various Stanford entities included:  consulting related to negotiation and selling of broadcast rights of 20/20 Cricket Tournament; consulting regarding the acquisition, operation, and sale of two commercial airlines servicing the Caribbean; and consulting and lobbying efforts related to modernization of the tax code of the United States Virgin Islands.  BBG, L.P. denies that any of the work BBG, L.P. did for various Stanford entities was as "a marketing tool" for Stanford International Bank and other Stanford entities.  BBG, L.P. denies that BBG, L.P performed consulting work regarding political contributions for the Stanford Parties.  BBG, L.P. denies that BBG, L.P. knowingly provided advice regarding various investments the Stanford Parties allegedly made using investor funds.

6.      BBG, L.P. denies that Barnes performed any work in his individual capacity for the Stanford Parties – all work done by Barnes was in his capacity as principal and as an employee of BBG, L.P.  BBG, L.P. lacks sufficient information or knowledge to admit or deny

the allegation contained in the first sentence of Paragraph 6 of the Complaint as it relates to the unfortunate effect of work performed by BBG, L.P and therefore denies it. BBG, L.P. denies the allegation of fact contained in the second sentence of Paragraph 6 of the Complaint, in that BBG, L.P.'s services provided substantial value, including reasonably equivalent value, to the Stanford Parties. BBG, L.P. denies that Barnes or BBG, L.P. had any knowledge whatsoever of any alleged "Ponzi scheme" or any "victims" of said alleged "Ponzi scheme" while BBG, L.P. was providing services to some of the Stanford Parties. BBG, L.P. lacks sufficient information or knowledge to admit or deny the remaining allegations of fact contained in Paragraph 6 of the Complaint and therefore denies them.

7.     BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in the first sentence of Paragraph 7 of the Complaint and therefore denies them. BBG, L.P. denies that Barnes received any payment in his individual capacity from the Stanford Parties. BBG, L.P. denies that BBG, L.P. rendered services or received payment from the Stanford Parties with any intent to hinder, delay, or defraud the Stanford Parties' creditors. BBG, L.P. lacks sufficient information or knowledge to admit or deny the remaining allegations of fact contained in Paragraph 7 of the Complaint and therefore denies them.

8.     BBG, L.P. admits that Plaintiffs seek the order set forth in Paragraph 8 of the Complaint but expressly denies Plaintiffs' entitlement to any of such relief for reasons more fully set forth in this Answer.

JURISDICTION AND VENUE

9.     BBG, L.P. admits the allegations set forth in Paragraph 9 of the Complaint.

10.    BBG, L.P. admits the allegations set forth in Paragraph 10 of the Complaint.

11.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations contained in Paragraph 11 Complaint and therefore denies them.

12.     BBG, L.P. admits the Court has personal jurisdiction over him in accordance with the authorities cited in Paragraph 12 of the Complaint.

### THE PARTIES

13.     BBG, L.P. admits that Receiver has been appointed by this Court and that the entities over which he is to serve as Receiver are set forth in appropriate orders related to his appointment. BBG, L.P. admits that Plaintiff is asserting the claims outlined in the Complaint in his capacity as Receiver. BBG, L.P. lacks sufficient information or knowledge to admit or deny the remaining allegations of fact contained in Paragraph 13 of the Complaint and therefore denies them.

14.     BBG, L.P. admits that the Committee was recognized by this Court via Order dated August 10, 2010, and the Order dictates the Committee's purpose and powers. BBG, L.P. admits that this Court has approved an agreement giving the Committee responsibility for litigating claims asserted in this action. BBG, L.P. lacks sufficient knowledge or information to admit or deny the remaining allegations of fact and arguments of law in Paragraph 14 and therefore denies them.

15.     BBG, L.P. admits the allegations contained in Paragraph 15 of the Complaint.

16.     BBG, L.P. admits the allegations contained in Paragraph 16 of the Complaint.

17.     BBG, L.P. admits that it has been served with a copy of the Complaint as set forth in Paragraph 17 of the Complaint and that it has appeared in this action by filing an Original Answer to Receiver's Original Complaint.

### STATEMENT OF FACTS

18.     BBG, L.P. admits the allegations contained in Paragraph 18 of the Complaint.

19.     BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in Paragraph 19 of the Complaint and therefore denies them.

20.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact and arguments of law contained in Paragraph 20 of the Complaint and therefore denies them.

21.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact and arguments of law contained in Paragraph 21 of the Complaint and therefore denies them.

22.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in Paragraph 22 of the Complaint and therefore denies them.

23.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in Paragraph 23 of the Complaint and therefore denies them.

24.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in Paragraph 24 of the Complaint and therefore denies them.

25.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in Paragraph 25 of the Complaint and therefore denies them.

26.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in Paragraph 26 of the Complaint and therefore denies them.

27.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in Paragraph 27 of the Complaint and therefore denies them.

28.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in Paragraph 28 of the Complaint and therefore denies them.

29.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in Paragraph 29 of the Complaint and therefore denies them.

30.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the

allegations of fact contained in Paragraph 30 of the Complaint and therefore denies them.

31.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 31 of the Complaint related to the source of payments made by the Stanford Parties to BBG, L.P. and therefore denies them. BBG, L.P. denies that Barnes or BBG, L.P. had any knowledge whatsoever of any alleged "Ponzi scheme." BBG, L.P. denies that Barnes received any payments in his individual capacity from the Stanford Parties. BBG, L.P. denies that Barnes performed any work for the Stanford Parties in his individual capacity – all work done by Barnes was in his capacity as principal and as an employee of BBG, L.P. BBG, L.P. denies that BBG, L.P. did not perform services of reasonably equivalent value in exchange for payment from some of the Stanford Parties; in fact, BBG, L.P. provided valuable services at or below rates normally charged by similar consulting services. BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegation contained in the second sentence of Paragraph 31 of the Complaint as it relates to work performed by BBG, L.P furthering the alleged Ponzi scheme and therefore denies it. BBG, L.P. denies that any of the services BBG, L.P. provided were of no utility from the perspective of the Stanford Parties' creditors.

32.    BBG, L.P. denies that Barnes, individually, performed any work for the Stanford Parties – all work done by Barnes was in his capacity as principal and as an employee of BBG, L.P. BBG, L.P. admits that BBG, L.P.'s work for various Stanford entities included:  consulting related to negotiation and selling of broadcast rights of 20/20 Cricket Tournament; consulting regarding the acquisition, operation, and sale of two commercial airlines servicing the Caribbean; and consulting and lobbying efforts related to modernization of the tax code of the United States Virgin Islands.  BBG, L.P. denies the allegations contained in Paragraph 32 of the Complaint that BBG, L.P. provided consulting or lobbying work to assist Allen Stanford's efforts to reduce

his personal income tax liability and that any work performed by BBG, L.P. was a "marketing tool" for Stanford International Bank and other Stanford entities. BBG, L.P. denies that BBG, L.P. performed any consulting work regarding political contributions for the Stanford Parties and denies that BBG, L.P. knowingly provided advice regarding various investments the Stanford Parties allegedly made using investor funds.

REQUESTED RELIEF

Non-Numbered Paragraph: BBG, L.P. admits the allegations of fact contained in the first sentence of this non-numbered paragraph. BBG, L.P. admits that the Committee was recognized by this Court via Order dated August 10, 2010, and the Order dictates the Committee's purpose and powers. BBG, L.P. admits that this Court has approved an agreement giving the Committee responsibility for litigating claims asserted in this action. BBG, L.P. lacks sufficient knowledge or information to admit or deny the remaining allegations of fact contained within this non-numbered paragraph and therefore denies them.

33.    BBG, L.P. admits the allegations set forth in Paragraph 33 of the Complaint.

34.    BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in Paragraph 34 of the Complaint and therefore denies them.

35.    BBG, L.P. admits that the Committee was recognized by this Court via Order dated August 10, 2010, and the Order dictates the Committee's purpose and powers. BBG, L.P. admits that this Court has approved an agreement giving the Committee responsibility for litigating claims asserted in this action. BBG, L.P. lacks sufficient knowledge or information to admit or deny the remaining allegations of fact contained in Paragraph 35 and therefore denies them.

36.    BBG, L.P. denies the allegation in Paragraph 36 of the Complaint that Plaintiffs are entitled to disgorgement. BBG, L.P. denies that Barnes, individually, was the recipient of

funds transferred from the Stanford Parties. BBG, L.P. denies that funds transferred by the Stanford Parties to BBG, L.P. were fraudulent transfers. BBG, L.P. further denies that payments were made to BBG, L.P. with actual intent to hinder, delay or defraud the Stanford Parties' creditors. BBG, L.P. denies that any payments were made by the Stanford Parties to Barnes, individually. BBG, L.P. is without sufficient information or knowledge to admit or deny the Receiver's allegation that funds were transferred to BBG, L.P. by the Stanford Parties at a time when the Stanford Parties were insolvent; therefore, BBG, L.P. denies the allegation. BBG, L.P. denies that the Stanford Parties did not receive reasonably equivalent value in exchange for transfers to BBG, L.P.

37.     BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact and the arguments of law contained in Paragraph 37 of the Complaint.

38.     BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 38 of the Complaint that the Stanford Parties were running a Ponzi scheme and therefore denies them. BBG, L.P. denies that Barnes, individually, was paid funds by the Stanford Parties. BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegation in Paragraph 38 of the Complaint that BBG, L.P. was paid with funds taken from "unwitting CD investors" and therefore denies same. BBG, L.P. denies that Barnes, individually, was the recipient of any funds transferred by the Stanford Parties. BBG, L.P. further denies that funds paid to BBG, L.P. by the Stanford Parties were fraudulently transferred because the funds were in payment for valuable services rendered in good faith by BBG, L.P. BBG, L.P. denies that Plaintiffs are entitled to disgorgement.

39.     BBG, L.P. is without sufficient information or knowledge concerning the allegations of fact and arguments of law in the first sentence of Paragraph 39 of the Complaint

and therefore denies them.  BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in sentence 2 of Paragraph 29 of the Complaint as Barnes does not know the identity of the person referred to as "Suarez" in the context of this Complaint. If Plaintiffs have mis-pled and this sentence was to refer to Barnes or BBG, L.P., then Barnes denies he, individually, received payments from the Stanford Parties and Barnes denies that Plaintiffs are entitled to recover the full amount of payments made by the Stanford Parties to BBG, L.P.

40.     BBG, L.P. is without sufficient information or knowledge to admit or deny the allegations of fact and arguments of law contained in Paragraph 40 of the Complaint and therefore denies them.

41.     BBG, L.P. denies the allegation in Paragraph 41 of the Complaint that there is no evidence that the BBG, L.P. provided value, much less reasonably equivalent value in exchange for transfers received.  BBG, L.P. denies that Barnes performed any work for the Stanford Parties in his individual capacity – all work done by Barnes was in his capacity as principal and as an employee of BBG, L.P.  BBG, L.P. denies that Barnes received any payments in his individual capacity from the Stanford Parties.  BBG, L.P. denies that CD Proceeds from the alleged Ponzi scheme were transferred to him, individually.  BBG, L.P. lacks sufficient information or knowledge to admit or deny the Plaintiffs' allegations regarding the source of the funds paid to BBG, L.P. and therefore denies them.  BBG, L.P. denies that BBG, L.P. did not perform services of reasonably equivalent value in exchange for payment from some of the Stanford Parties; in fact, BBG, L.P. provided valuable services at or below rates normally charged by similar consulting services.  BBG, L.P. admits that from approximately 2005 to 2009, BBG, L.P. was paid approximately $5.1 million by various Stanford entities for consulting work

performed by BBG, L.P. and its agents, of which neither Barnes nor BBG, L.P. exercised dominion or control over approximately $1.3 million as the money was owed to third-party consultants who performed work on behalf of the Stanford entities through BBG, L.P. BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegation contained in Paragraph 41 of the Complaint as it relates to work performed by BBG, L.P furthering the alleged Ponzi scheme and therefore denies it. BBG, L.P. denies that any of the services BBG, L.P. provided were of no utility from the perspective of the Stanford Parties' creditors. BBG, L.P. denies that the Barnes Defendants (as defined in the Complaint) cannot meet the burden established under the law to show that reasonably equivalent value was provided in good faith to the Stanford Parties in exchange for the payments received by BBG, L.P. BBG, L.P. denies that Plaintiffs are entitled to disgorgement of any payments made to BBG, L.P. and third-party vendors for services performed for the Stanford Parties. BBG, L.P. is without sufficient information or knowledge to admit or deny the arguments of law contained in sentences 2 and 3 of Paragraph 41 of the Complaint and therefore denies them.

42. BBG, L.P. is without sufficient information or knowledge to admit or deny the arguments of law contained in sentence 1 of Paragraph 42 of the Complaint, and therefore denies them. BBG, L.P. admits that Plaintiffs' seek attorneys' fees and costs in this action, but denies that Plaintiffs are entitled to recovery of same.

43. BBG, L.P. admits that Plaintiffs seek possession of alleged CD proceeds as claimed in Paragraph 43 of the Complaint, but BBG, L.P. lacks sufficient information or knowledge to admit or deny the purpose for which Plaintiffs seek return of such alleged proceeds. BBG, L.P. denies that Barnes received any payments in his individual capacity from the Stanford Parties and Barnes denies that CD Proceeds from the alleged Ponzi scheme were

DEFENDANT BEN BARNES GROUP, L.P.'S ANSWER TO FIRST AMENDED COMPLAINT AND RESTATED THIRD-PARTY COMPLAINT – PAGE 11

transferred to Barnes, individually. BBG, L.P. lacks sufficient information or knowledge to admit or deny the Plaintiffs' allegations regarding the source of the funds paid to BBG, L.P. and therefore Barnes denies them.

44.     BBG, L.P. is without sufficient information or knowledge concerning the claims in the first sentence of Paragraph 44 of the Complaint that Plaintiffs were only able to discover the fraudulent nature of the above referenced transfers following the removal of Stanford and his accomplices from the control of the Stanford entities and after a time-consuming and extensive review of paper and electronic documents relating to the Stanford Entities and therefore denies them. BBG, L.P. is without sufficient information or knowledge concerning the allegations of fact and arguments of law contained in sentence 2 of Paragraph 44 of the Complaint and therefore denies them. BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact contained in sentence 3 of Paragraph 44 of the Complaint as Barnes does not know the identity of the person referred to as "Suarez" in the context of this Complaint. If Plaintiffs have mis-pled and this sentence was to refer to Barnes or BBG, L.P. then BBG, L.P. denies that any CD proceeds were paid to Barnes, individually and BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations of fact claiming that CD proceeds were paid to BBG, L.P. and therefore denies them. BBG, L.P. denies the allegations of fact and arguments of law in the last sentence of Paragraph 44 of the Complaint that that the discovery rule and equitable tolling principles apply to the facts of this case.

45.     BBG, L.P. lacks sufficient information or knowledge to admit or deny the allegations contained in the first sentence of Paragraph 45 of the Complaint that the Stanford Parties orchestrated the Ponzi scheme and therefore denies them. BBG, L.P. denies that CD Proceeds from the alleged Ponzi scheme were transferred to Barnes, individually. BBG, L.P.

lacks sufficient information or knowledge to admit or deny the Plaintiffs' allegations regarding the source of the funds transferred to BBG, L.P. and therefore Barnes denies them. BBG, L.P. denies that BBG, L.P. rendered services or received payment from the Stanford Parties with any intent to hinder, delay, or defraud the Stanford Parties' creditors. BBG, L.P. denies that Barnes performed any work for the Stanford Parties in his individual capacity – all work done by Barnes was in his capacity as principal and as an employee of BBG, L.P. BBG, L.P. denies that Barnes received any payments in his individual capacity from the Stanford Parties. BBG, L.P. denies that Plaintiffs are entitled to disgorgement of payments made to BBG, L.P. and third-party vendors for work performed for various Stanford entities. BBG, L.P. admits that Plaintiffs are seeking the relief requested in Paragraph 45 of the Complaint, but denies that Plaintiffs are entitled to any of the relief set forth in Paragraph 45 of the Complaint.

PRAYER

46.     BBG, L.P. denies that Plaintiffs are entitled to any of the relief set forth in Paragraph 46 of the Complaint.

**<u>AFFIRMATIVE DEFENSES</u>**

47.     Plaintiffs' claims are barred, in whole or in part, because the fraudulent transfer allegations have not been pled with particularity.

48.     Plaintiffs' claims are barred, in whole or in part, because Barnes is not a transferee, and BBG, L.P. is a good-faith transferee.

49.     Plaintiffs' claims are barred, in whole or in part, because any amounts paid to BBG, L.P. were not fraudulent transfers as a matter of law.

50.     Plaintiffs' claims are barred, in whole or in part, because BBG, L.P. provided

consulting services for reasonably equivalent value and in good-faith.

51.    Plaintiffs' claims are barred, in whole or in part, because BBG, L.P. exercised no dominion or control over portions of the alleged fraudulent transfers as the money paid by the Stanford Parties was attributable to third-party vendors and consultants who were directly owed the funds for work they performed for the Stanford Parties, and BBG, L.P. is entitled to an offset of such payments.

52.    Plaintiffs' claims are barred, in whole or in part, by the doctrines of justification, privilege and/or legal right.

53.    Plaintiffs' claims are barred, in whole or in part, because BBG, L.P. was not actually aware of the alleged Ponzi scheme at the time services were rendered and payment was made for such services.

54.    Plaintiffs' claims are barred, in whole or in part, because BBG, L.P. had no constructive knowledge of the alleged Ponzi scheme at the time services were rendered and payment was made for such services.

55.    Plaintiffs' claims are barred, in whole or in part, by Plaintiffs failure to mitigate their damages.

56.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

57.    Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations.

58.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

59.    Plaintiffs' claims are barred, in whole or in part, by the fraudulent inducement of the Stanford Parties.

60.    Plaintiffs' claims are barred, in whole or in part, by fraudulent misrepresentations

DEFENDANT BEN BARNES GROUP, L.P.'S ANSWER TO FIRST AMENDED COMPLAINT AND RESTATED THIRD-PARTY COMPLAINT – PAGE 14

made by the Stanford Parties.

61.     In the event Plaintiffs prevail on their claim for damages, any such damages must be offset by the value received by the Stanford estate.

58.     BBG, L.P. is entitled to contributions from third-party consultants or vendors, in the event Plaintiffs should prevail against BBG, L.P.

## JURY DEMAND

59.     Pursuant to FED. R. CIV. P. 38, BBG, L.P. requests trial by jury on all issues triable by a jury.

## THIRD-PARTY COMPLAINT

60.     Without admitting the merits of the Plaintiffs' claims asserted in the Complaint, in the event that Plaintiffs prevail on their claims, BBG, L.P. seeks contribution/reimbursement from third-party defendants.

### I. PARTIES

61.     Ben Barnes Group, L.P. is a Texas limited partnership with its principal office and place of business in Austin, Texas and is a defendant in this action.

62.     Capitol Counsel, LLC ("Capitol Counsel") is a Washington D.C. limited liability company with its principal office and place of business in Washington D.C.  Capital Counsel may be served through its registered agent James C. Gould, 900 19th Street N.W., Washington, D.C. 20006.

63.     Cauthen Forbes & Williams, LLC ("CFW") is a Delaware limited liability company with its principal office and place of business in Washington D.C. CFW may be served through its registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle, Delaware 19801.

64.     Chesapeake Enterprises, Inc. ("Chesapeake") is a Washington D.C. corporation

DEFENDANT BEN BARNES GROUP, L.P.'S ANSWER TO FIRST AMENDED COMPLAINT AND RESTATED THIRD-PARTY COMPLAINT – PAGE 15

with its principal office and place of business in Washington D.C.  Chesapeake may be served through its registered agent Wayne Berman, 2055 Whitehaven St. N.W., Washington, D.C. 20008.

65.     Robert Mitchell Delk ("Delk") is an individual resident of Washington, D.C. who may be served at 3110 44th Street, NW, Washington, DC 20016.

66.     Synergics Energy Services, LLC ("Synergics") is a Maryland limited liability company with its principal office and place of business in Annapolis, MD.  Synergics may be served through its registered agent Wayne L. Rogers, 191 Main Street, 3rd Floor, Annapolis, MD 21401.

## II. JURISDICTION

67.     This Court has supplemental jurisdiction over BBG, L.P.'s claims against Capital Counsel, CFW, Chesapeake, Delk and Synergics pursuant to 28 U.S.C. § 1367(a) because such claims are so related to the claims asserted by Plaintiffs against BBG, L.P. in the original action that they form part of the same case or controversy.

68.     Venue is proper under 15 U.S.C. § 77v(a); 15 U.S.C. § 78aa; and 28 U.S.C. § 754.

## III. FACTUAL BACKGROUND

69.     In approximately 2005, BBG, L.P., a consulting group, began an arms-length relationship with various Stanford Financial entities (the "Stanford Entities").  BBG, L.P.'s arms-length relationship with the Stanford Entities continued until approximately March 2009.

70.     From approximately 2005 through 2009, BBG, L.P. provided consulting services for the Stanford Entities including: consulting related to negotiation and selling of broadcast rights of 20/20 Cricket Tournament; consulting regarding the acquisition, operation, and sale of two commercial airlines servicing the Caribbean; and consulting and lobbying efforts to related to modernization of the tax code of the United States Virgin Islands.

DEFENDANT BEN BARNES GROUP, L.P.'S ANSWER TO FIRST AMENDED COMPLAINT AND RESTATED THIRD-PARTY COMPLAINT – PAGE 16

71.    In order to effectively carry out the consulting services requested by the Stanford Entities, BBG, L.P. relied on the assistance of various consultants and lobbyists including: Capital Counsel, CFW, Chesapeake, Delk and Synergics.  BBG, L.P. engaged Capital Counsel, CFW, Chesapeake, Delk and Synergics to specifically provide consulting services on matters for the Stanford Entities.

72.    In exchange for the consulting services BBG, L.P. and Capital Counsel, CFW, Chesapeake, Delk and Synergics, provided to the Stanford Entities, BBG, L.P., acting in part as a payment clearinghouse, was paid approximately $5.1 million by the Stanford Entities. Approximately $1.3 million of the total amount paid to BBG, L.P. by the Stanford Entities was passed through BBG, L.P. and paid directly to Capital Counsel, CFW, Chesapeake, Delk and Synergics for their consulting services.

73.    During the years 2007-2009, Capital Counsel was paid approximately $360,000 for consulting work on behalf of the Stanford Entities.

74.    During the years 2007-2009, CFW was paid approximately $170,000 for consulting work on behalf of the Stanford Entities.

75.    During the years 2007-2008, Chesapeake was paid approximately $80,000 for consulting work on behalf of the Stanford Entities.

76.    During the years 2007-2009, Delk was paid approximately $500,000 for consulting work on behalf of the Stanford Entities.

77.    During 2008, Synergics was paid approximately $173,000 for consulting work on behalf of the Stanford Entities.

## IV. Claim For Contribution/Reimbursement

78.    Plaintiffs allege that all monies BBG, L.P. received from the Stanford Parties (as

defined in the Complaint) constitute fraudulent transfers. Plaintiffs further allege that BBG, L.P. cannot establish that it provided reasonably equivalent value, and did so in good faith, in exchange for the allegedly fraudulent transfers received from the Stanford Parties. BBG, L.P. denies Plaintiffs' allegations.

79.     In the event that Plaintiffs are able to prevail on their claims against BBG, L.P., then BBG, L.P. seeks contribution/reimbursement from Capital Counsel, CFW, Chesapeake, Delk and Synergics for the money BBG, L.P. passed-through to Capital Counsel, CFW, Chesapeake, Delk and Synergics as a result of the consulting work they performed for the Stanford Entities.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Ben Barnes Group, L.P. prays that Plaintiffs Ralph S. Janvey, in his capacity as court-appointed receiver for the Stanford International Bank, Ltd. and The Official Stanford Investors Committee take nothing by their suit against BBG, L.P. BBG, L.P. also prays that in the event Plaintiffs prevail on their claim against BBG, L.P. that BBG, L.P. is granted contribution/reimbursement from Capital Counsel, CFW, Chesapeake, Delk and Synergics for the amount passed-through BBG, L.P. to Capital Counsel, CFW, Chesapeake, Delk and Synergics for consulting work each performed on behalf of the Stanford Entities. Further, BBG, L.P. prays that BBG, L.P. be awarded court costs, and for such other and further relief to which BBG, L.P. may be justly entitled.

Respectfully submitted

**WINSTEAD PC**

By:  */s/*       *Jay J. Madrid*

> Jay J. Madrid
> Texas Bar No. 12802000
> Kristen L. Sherwin
> Texas Bar No. 24043918
> 1201 Elm Street, Suite 5400
> Dallas, Texas 75270
> (214) 745-5400 (phone)
> (214) 745-5390 (fax)
> jmadrid@winstead.com
> ksherwin@winstead.com
>
> -- AND –
>
> Gary E. Zausmer
> Texas Bar No. 2251350
> 401 Congress Ave., Suite 2100
> Austin, Texas 78701
> (512) 370-2800 (phone)
> (512) 370-2850 (fax)
> gzausmer@winstead.com

ATTORNEYS FOR DEFENDANTS BEN
BARNES & BEN BARNES GROUP, L.P.

### CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2012, I electronically filed the foregoing document with the Clerk of the court for the Northern District of Texas, Dallas Division, by using the CM/ECF system which will send notification of such filing to all CM/ECF participants and counsel of record.

      */s/*      *Jay J. Madrid*
Jay J. Madrid

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS | § | |
| COURT-APPOINTED RECEIVER FOR THE | § | |
| STANFORD INTERNATIONAL BANK, LTD., | § | |
| ET AL. and THE OFFICIAL STANFORD | § | |
| INVESTORS COMMITTEE | § | |
| | § | Case No. 3:10-cv-0527-N |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| BEN BARNES AND | § | |
| BEN BARNES GROUP, L.P., | § | |
| | | |
| Defendants. | | |

FIRST AMENDED COMPLAINT AGAINST
BEN BARNES AND BEN BARNES GROUP, L.P.

## SUMMARY

1.    The Court has ordered Receiver Ralph S. Janvey ("Receiver") to take control of all assets of the Receivership Estate in order to make an equitable distribution to claimants injured by a massive fraud orchestrated by Allen Stanford, James Davis, and others. The Court has recognized the Official Stanford Investors Committee (the "Committee"), which is working with the Receiver to investigate and prosecute certain claims, including the claims asserted in this action. Under the terms of an agreement approved by this Court, the Committee has primary responsibility for litigating the claims asserted in this action for the benefit of the Receivership Estate.

2.    The Receiver's and the Committee's investigation to date reveals that revenue from the sale of fraudulent certificates of deposit ("CD Proceeds") generated substantially all of

RECEIVER'S ORIGINAL COMPLAINT
AGAINST BEN BARNES AND BEN BARNES GROUP, L.P.

1

the income for the Stanford Defendants and the many related Stanford entities (collectively, the "Stanford Parties").

3.      The Receiver and the Committee (collectively, "Plaintiffs") have identified substantial payments from the Stanford Parties to Ben Barnes and Ben Barnes Group, L.P., a business consulting and lobbying group founded by Ben Barnes (collectively, the "Barnes Defendants"). The payments from the Stanford Parties to the Barnes Defendants totaled over $5 million. Payments to the Barnes Defendants were funded in part by Stanford entities, and in part by Allen Stanford personally, using investor funds drawn from bank accounts in Houston and Antigua. Through this First Amended Complaint, Plaintiffs seek the return of these funds in order to make an equitable distribution to claimants. The investigation is continuing, and should more payments of CD proceeds to the Barnes Defendants be discovered, Plaintiffs will amend this First Amended Complaint to assert claims regarding such additional payments.

4.      At least as early as 2005, the Stanford Parties began a business relationship with the Barnes Defendants, with the Barnes Defendants ostensibly providing various consulting, lobbying, and related services in exchange for the above-referenced payments.

5.      The Barnes Defendants' work for the Stanford Parties included (a) consulting and lobbying in connection with United States Virgin Islands ("USVI") tax incentive laws to assist Allen Stanford's efforts to reduce his personal federal income tax liability; (b) consulting and lobbying in connection with the annual "20/20" cricket tournament held in Antigua, a marketing tool for Stanford International Bank and other Stanford companies; (c) consulting regarding political contributions; and (d) advice regarding various investments the Stanford Parties made using investor funds, including Caribbean airlines, alternative energy investments, and the proposed development of an island near Antigua.

6.     The Barnes Defendants' work for the Stanford Parties (such as marketing the cricket tournament) had the unfortunate effect of attracting new victims to the Stanford Parties' fraudulent investment scheme.    The Barnes Defendants' services provided no reasonably equivalent value to the creditors and victims of the Stanford Parties' Ponzi scheme.

7.     At all times relevant to this First Amended Complaint, the Stanford Parties were insolvent, and Allen Stanford operated the Stanford entities in furtherance of his fraudulent scheme.  Each payment from the Stanford Parties to the Barnes Defendants was made with actual intent to hinder, delay, Plaintiffs were only able to discover the fraudulent nature of the above-referenced transfers after Allen Stanford and his accomplices were removed from control of the Stanford entities.

8.     Plaintiffs seek an order that: (a) the payments from the Stanford Parties to the Barnes Defendants constitute fraudulent transfers under applicable law; (b) the payments from the Stanford Parties to the Barnes Defendants are property of the Receivership Estate held pursuant to a constructive trust for the benefit of the Receivership Estate; (c) the Barnes Defendants are liable to the Receivership Estate for an amount equaling the payments they received from the Stanford Parties; and (d) the Receiver is entitled to an award of reasonable attorneys' fees, costs, and interest.

## JURISDICTION & VENUE

9.     This Court has jurisdiction over this action, and venue is proper, under Section 22(a) of the Securities Act (15 U.S.C. § 77v(a)), Section 27 of the Exchange Act (15 U.S.C. § 78aa), and under Chapter 49 of Title 28, Judiciary and Judicial Procedure (28 U.S.C. § 754).

10.     Further, as the Court that appointed the Receiver, this Court has jurisdiction over any claim brought by the Receiver to execute his Receivership duties.

11.    Further, within 10 days of his appointment, the Receiver filed the original Complaint and Order Appointing the Receiver in 26 United States district courts pursuant to 28 U.S.C. § 754, giving this Court *in rem* and *in personam* jurisdiction in each district where the Complaint and Order have been filed, including the Western District of Texas.

12.    This Court has personal jurisdiction over Ben Barnes and Ben Barnes Group, L.P. pursuant to FED. R. CIV. P. 4(k)(1)(C) and 15 U.S.C. §§ 754 and 1692.

### THE PARTIES

13.    Plaintiff Ralph S. Janvey has been appointed by this Court as the Receiver for the assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located, and the legally recognized privileges (with regard to the entities) of Stanford International Bank, Ltd., Stanford Group Company, Stanford Capital Management, LLC, Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Stanford Financial Group, the Stanford Financial Group Bldg., Inc., and all entities the foregoing persons and entities own or control, including, but not limited to Stanford Financial Group Global Management, LLC ("SFGGM") and Stanford Financial Group Company ("SFGC") (the "Receivership Assets").   Plaintiff Janvey is asserting the claims outlined herein in his capacity as Court-appointed Receiver.

14.    The Committee was formed and recognized by this Court on August 10, 2010. *See SEC v. Stanford Int'l Bank, Ltd., et al,* Civil Action No. 3-09-CV-0298-N [ Docket No. 1149] (the "Committee Order").   As stated in the terms of the Committee Order, the Committee is cooperating with the Receiver in the prosecution and identification of actions and proceedings for the benefit of the Receivership Estate and the Stanford Investors. See id. at ¶¶ 7, 8.   The Receiver and the Committee reached an agreement regarding the prosecution of certain claims,

including the claims asserted in this First Amended Complaint. By the terms of that agreement, which has been approved by this Court, the Committee has primary responsibility for litigating the claims asserted in this First Amended Complaint. *See* Order, Docket No. 1267.

15.     Defendant Ben Barnes Group, L.P. is a Texas limited partnership with its principal office in Austin, Texas.

16.     Defendant Ben Barnes is a U.S. citizen and resident of Austin, Texas.

17.     Each Defendant has been served with the Original Complaint pursuant to the Federal Rules of Civil Procedure and has appeared in this action.

## STATEMENT OF FACTS

18.     On February 16, 2009, the Securities and Exchange Commission commenced a lawsuit in this Court against R. Allen Stanford, two associates, James M. Davis and Laura Pendergest-Holt, and three of Mr. Stanford's companies, Stanford International Bank, Ltd. ("SIB" or "the Bank"), Stanford Group Company, and Stanford Capital Management, LLC (collectively "Stanford Defendants"). On the same date, the Court signed an Order appointing a Receiver, Ralph S. Janvey, over all property, assets, and records of the Stanford Defendants, and all entities they own or control.

## I.     *Stanford Defendants Operated a Ponzi Scheme*

19.     As alleged by the SEC, the Stanford Defendants marketed fraudulent SIB CDs to investors through SGC financial advisors pursuant to a Regulation D private placement. SEC's Second Amended Complaint (Doc. 952), ¶ 27. The CDs were sold by Stanford International Bank, Ltd. *Id.*

20.     The Stanford Defendants orchestrated and operated a wide-ranging Ponzi scheme. Stanford Defendant James M. Davis has admitted that the Stanford fraud was a Ponzi scheme

from the beginning.  Doc. 771 (Davis Plea Agreement) at ¶ 17(n) (Stanford, Davis, and other

conspirators created a *"massive Ponzi scheme"*); Doc. 807 (Davis Tr. of Rearraignment) at

16:16-17, 21:6-8, 21:15-17 (admitting the Stanford Ponzi fraud was a *"massive Ponzi scheme ab*

*initio"*).  In fact, this Court recently found that the Stanford fraud was indeed a Ponzi scheme.

*See* Case No. 3:09-CV-0724-N, Doc. 456 at 2 (*"The Stanford scheme operated as a classic Ponzi*

*scheme, paying dividends to early investors with funds brought in from later investors."*), at 11.

(*"[T]he Receiver presents ample evidence that the Stanford scheme . . . was a Ponzi scheme."*),

and at 13 (*"The Court finds that the Stanford enterprise operated as a Ponzi scheme . . . ."*); Doc.

1315 at 10-11 (*"The Court previously determined that the Stanford Defendants operated a*

*massive Ponzi scheme that stole approximately $8 billion from an estimated 50,000 investors*

*scattered over more than 100 countries."*) and at 14 (*"The Stanford Defendants' Ponzi scheme*

*dissipated billions of dollars over its long existence."*).

    21.    In an opinion filed on December 15, 2010, the Fifth Circuit upheld this Court's

findings that the Stanford fraud was a Ponzi scheme.  *See Janvey v. Alguire*, 628 F.3d 164, 168-

69, 185 (5th Cir. 2010) (motion for reh'g *en banc* pending) (upholding this Court's Order).  In

particular, the Fifth Circuit made several rulings on the nature of the Stanford fraud, as follows:

We find that the district court did not err in finding that the Stanford enterprise operated as a

Ponzi scheme.

*     *     *

> The Davis Plea and the Van Tassel Declarations provide sufficient
> evidence to support a conclusion that there is a substantial
> likelihood of success on the merits that the Stanford enterprise
> operated as a Ponzi scheme. . . . The Davis Plea, when read as a
> whole, provides sufficient evidence for the district court to assume
> that the Stanford enterprise constituted a Ponzi scheme ab initio.

*     *     *

> The Receiver carried his burden of proving that he is likely to succeed in his prima facie case by providing sufficient evidence that a Ponzi scheme existed ....
>
> \*       \*       \*
>
> Here, the Receiver provided evidence of a massive Ponzi scheme .. . The record supports the fact that Stanford, when it entered receivership, was grossly undercapitalized.

*Id.* at 176-78, 180.

22.     In marketing, selling, and issuing CDs to investors, the Stanford Defendants repeatedly touted the CDs' safety and security and SIB's consistent, double-digit returns on its investment portfolio. SEC's Second Amended Complaint (Doc. 952), ¶¶ 32-33.

23.     In its brochure, SIB told investors, under the heading *"Depositor Security,"* that its investment philosophy is *"anchored in time-proven conservative criteria, promoting stability in [the Bank's] certificate of deposit."* SIB also emphasized that its *"prudent approach and methodology translate into deposit security for our customers." Id.* ¶ 34. Further, SIB stressed the importance of investing in *"marketable"* securities, saying that *"maintaining the highest degree of liquidity"* was a *"protective factor for our depositors." Id.*

24.     In its 2006 and 2007 Annual Reports, SIB told investors that the Bank's assets were invested in a *"well-balanced global portfolio of marketable financial instruments, namely U.S. and international securities and fiduciary placements." Id.* ¶ 35. More specifically, SIB represented that its 2007 portfolio allocation was 58.6% equity, 18.6% fixed income, 7.2% precious metals and 15.6% alternative investments. *Id.*

25.     Consistent with its Annual Reports and brochures, SIB trained SGC financial advisors, in February 2008, that *"liquidity/marketability of SIB's invested assets"* was the *"most important factor to provide security to SIB clients." Id.* ¶ 36. In training materials, the Stanford

Plaintiffs' First Amended Complaint
Against Ben Barnes and Ben Barnes Group, L.P.

7

Defendants also claimed that SIB had earned consistently high returns on its investment of deposits (ranging from 11.5% in 2005 to 16.5% in 1993). *Id.* ¶ 49.

26. Contrary to the Stanford Defendants' representations regarding the liquidity of SIB's portfolio, SIB did not invest in a "well-diversified portfolio of highly marketable securities." Instead, significant portions of the Bank's portfolio were misappropriated by the Stanford Defendants and were either placed in speculative investments (many of them illiquid, such as private equity deals), diverted to other Stanford Entities "on behalf of shareholder" - *i.e.*, for the benefit of Allen Stanford, or used to finance Allen Stanford's lavish lifestyle (*e.g.*, jet planes, a yacht, other pleasure craft, luxury cars, homes, travel, company credit cards, etc.). In fact, at year-end 2008, the largest segments of the Bank's portfolio were private equity; over-valued real estate; and at least $1.6 billion in undocumented "loans" to Defendant R. Allen Stanford. *See Id.* ¶¶ 39-40.

27. In an effort to conceal their fraud and ensure that investors continued to purchase the CDs, the Stanford Defendants fabricated the performance of SIB's investment portfolio. *Id.* ¶ 4.

28. SIB's financial statements, including its investment income, were fictional. *Id.* ¶¶ 4, 53. In calculating SIB's investment income, Stanford Defendants R. Allen Stanford and James Davis provided to SIB's internal accountants a pre-determined return on investment for the Bank's portfolio. *Id.* Using this pre-determined number, SIB's accountants reverse-engineered the Bank's financial statements to reflect investment income that SIB did not actually earn. *Id.*

29. For a time, the Stanford Defendants were able to keep the fraud going by using funds from current sales of SIB CDs to make interest and redemption payments on pre-existing

PLAINTIFFS' FIRST AMENDED COMPLAINT
AGAINST BEN BARNES AND BEN BARNES GROUP, L.P.

8

CDs. *See id.* ¶ 1. However, in late 2008 and early 2009, CD redemptions increased to the point that new CD sales were inadequate to cover redemptions and normal operating expenses. As the depletion of liquid assets accelerated, this fraudulent Ponzi scheme collapsed.

30.     Most of the above facts discovered from Stanford's records have since been confirmed by Stanford's Chief Financial Officer, James Davis, who has pleaded guilty to his role in running the Stanford Ponzi scheme.

## II.     Stanford Transferred CD Proceeds from the Ponzi Scheme to the Barnes Defendants.

31.     CD Proceeds from the Ponzi scheme described above were transferred by or at the direction of the Stanford Parties to the Barnes Defendants. The Barnes Defendants did not perform services of reasonably equivalent value in exchange for those payments, and in many instances performed services that simply furthered the Ponzi scheme. Any services provided by the Barnes Defendants were of no utility from the perspective of the Stanford Parties' creditors.

32.     The Barnes Defendants' work for the Stanford Parties included (a) consulting and lobbying in connection with United States Virgin Islands ("USVI") tax incentive laws in order to assist Allen Stanford's efforts to reduce his personal federal income tax liability; (b) consulting and lobbying in connection with the annual "20/20" cricket tournament held in Antigua, a marketing tool for Stanford International Bank and other Stanford companies; (c) consulting regarding political contributions; and (d) advice regarding various investments the Stanford Parties made using investor funds, including Caribbean airlines, alternative energy investments, and the proposed development of an island near Antigua.

## REQUESTED RELIEF

This Court appointed Ralph S. Janvey as Receiver for the Receivership Assets. Order Appointing Receiver (Doc. 10) at ¶¶ 1-2; Amended Order Appointing Receiver (Doc. 157) at ¶¶ 1-2; Second Amended Order Appointing Receiver (Doc. 1130) at ¶¶ 1-2. The Committee was

formed and recognized by this Court on August 10, 2010, *see* Committee Order [Docket No. 1149], and under the terms of a Court-approved agreement between the Receiver and the Committee, the Committee has primary responsibility for litigating the claims asserted in this First Amended Complaint. *See* Order, Docket No. 1267. Plaintiffs seek the relief described herein in these respective capacities.

33.     Paragraph 4 of the Order Appointing Receiver, signed by the Court on February 16, 2009, authorizes the Receiver "to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." Order Appointing Receiver (Doc. 10) at ¶ 4; Amended Order Appointing Receiver (Doc. 157) at ¶ 4; Second Amended Order Appointing Receiver (Doc. 1130) at ¶ 4. Paragraph 5(c) of the Order specifically authorizes the Receiver to "[i]nstitute such actions or proceedings [in this Court] to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." Order Appointing Receiver (Doc. 10) at ¶ 5(c); Amended Order Appointing Receiver (Doc. 157) at ¶ 5(c); Second Amended Order Appointing Receiver (Doc. 1130) at ¶ 5(c); *see also Alguire*, 628 F.3d at 183-84 ("[R]eceivers are legal hybrids, imbued with rights and obligations analogous to the various actors required to effectively manage an estate in the absence of the 'true' owner. . . . [R]eceivers have long held the power to assert creditor claims.").

34.     One of Plaintiffs' key duties is to maximize distributions to defrauded investors and other claimants. *See* Second Amended Order Appointing Receiver (Doc. 1130) at ¶ 5(g), (j) (ordering the Receiver to "[p]reserve the Receivership Estate and minimize expenses in furtherance of maximum and timely disbursement thereof to claimants"); *Scholes v. Lehmann*, 56

F.3d 750, 755 (7th Cir. 1995) (receiver's "only object is to maximize the value of the [estate assets] for the benefit of their investors and any creditors"); *SEC v. TLC Invs. & Trade Co.*, 147 F. Supp. 2d 1031, 1042 (C.D. Cal. 2001); *SEC v. Kings Real Estate Inv. Trust*, 222 F.R.D. 660, 669 (D. Kan. 2004). But before Plaintiffs can attempt to make victims whole, they must locate and take exclusive control and possession of assets of the Receivership Estate or assets traceable to the Receivership Estate. *See* Second Amended Order Appointing Receiver (Doc. 1130) at ¶ 5(b).

35.     The Committee Order, signed by the Court on August 10, 2010, states that "[t]he Committee shall have rights and responsibilities similar to those of a committee appointed to serve in a bankruptcy case under title 11 of the United States Code" and that the Committee may bring actions for the benefit of the Receivership Estate jointly with the Receiver. *See* Doc. 1149 at ¶¶ 2, 7-8.

## I.     *Plaintiffs are Entitled to Disgorgement of Assets Fraudulently Transferred to the Barnes Defendants.*

36.     Plaintiffs are entitled to disgorgement of the funds transferred from the Stanford Parties to the Barnes Defendants because such payments constitute fraudulent transfers under applicable law. The Stanford Parties made the payments to the Barnes Defendants with actual intent to hinder, delay, or defraud Stanford's creditors; as a result, Plaintiffs are entitled to the disgorgement of those payments. Additionally, the Stanford Parties transferred the funds to the Barnes Defendants at a time when the Stanford Parties were insolvent, and the Stanford Parties did not receive reasonably equivalent value in exchange for the transfers.

37.     Plaintiffs may avoid transfers made with the actual intent to hinder, delay, or defraud creditors. "[T]ransfers made from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi scheme is, as a matter of law, insolvent from inception." *Quilling v.*

*Schonsky*, No. 07-10093, 2007 WL 2710703, at *2 (5th Cir. Sept. 18, 2007); *see also Alguire*, 628 F.3d at 176 ("[A] Ponzi scheme 'is, as a matter of law, insolvent from inception.'"); *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) (". . . [the debtor] was a Ponzi scheme, which is, as a matter of law, insolvent from its inception. . . . The Receiver's proof that [the debtor] operated as a Ponzi scheme established the fraudulent intent behind transfers made by [the debtor].").

38.     The Stanford Parties were running a Ponzi scheme and paid the Barnes Defendants with funds taken from unwitting CD investors. Plaintiffs are, therefore, entitled to disgorgement of the funds the Stanford Parties fraudulently transferred to the Barnes Defendants.

39.     Consequently, the burden is on the Barnes Defendants to establish an affirmative defense, if any, of good faith and provision of reasonably equivalent value. *See* Case No. 3:09-CV-0724-N, Doc. 456 at 13 ("A defendant invoking this defense has the burden to show both objective good faith and reasonable equivalence of consideration.") (emphasis in original); *see also Scholes*, 56 F.3d at 756-57 ("If the plaintiff proves fraudulent intent, the burden is on the defendant to show that the fraud was harmless because the debtor's assets were not depleted even slightly."). Plaintiffs are, therefore, entitled to recover the full amount of the payments that Suarez received — either directly or indirectly — unless she proves both objective good faith and reasonably equivalent value.

40.     The good-faith element of this affirmative defense requires that the Barnes Defendants prove objective, rather than subjective, good faith. *See Warfield*, 436 F.3d at 559-560 (good faith is determined under an "objectively knew or should have known" standard); *In re IFS Fin. Corp.*, Bankr. No. 02-39553, 2009 WL 2986928, at *15 (Bankr. S.D. Tex. Sept. 9, 2009) (objective standard is applied to determine good faith); *Quilling v. Stark*, No. 3-05-CV-

1976-BD, 2007 WL 415351, at *3 (N.D. Tex. Feb. 7, 2007) (good faith "must be analyzed under an objective, rather than a subjective, standard.  The relevant inquiry is what the transferee objectively knew or should have known instead of examining the transferee's actual knowledge from a subjective standpoint.") (internal citations and quotation marks omitted).

41.     There is no evidence that the Barnes Defendants provided any value — much less reasonably equivalent value — in exchange for the fraudulent transfers they received.  Moreover, both this Court and the Fifth Circuit have held that providing services in furtherance of a Ponzi scheme does not confer reasonably equivalent value.  *Warfield*, 436 F.3d at 555, 560; Case No. 3:09-CV-0724-N, Doc. 456 at 13-14 ("[A]s a matter of law, services provided in the context of a Ponzi scheme do not constitute 'reasonably equivalent value.'").  Furthermore, consideration which has no utility from the creditor's perspective does not satisfy the statutory definition of "value." *SEC v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007); *In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000).  The Barnes Defendants cannot now claim that, in return for furthering the Ponzi scheme and helping it endure, they should be entitled to keep the over $5 million in CD Proceeds they received from the Stanford Parties.  The Barnes Defendants cannot meet their burden to establish that they provided reasonably equivalent value for the CD Proceeds they directly or indirectly received from the Stanford Parties and that they received such payments in good faith.  Accordingly, Plaintiffs are entitled to the disgorgement of those funds.

42.     Moreover, under applicable fraudulent-transfer law, Plaintiffs are entitled to attorneys' fees and costs for their claims against the Barnes Defendants. *See*, *e.g.*, TEX. BUS. & COM. CODE ANN. § 24.013 ("[T]he court may award costs and reasonable attorney's fees as are equitable and just.").  As a result, the Plaintiffs request reasonable attorneys' fees and costs for prosecuting their fraudulent-transfer claims against the Barnes Defendants.

43.    In order to carry out the duties delegated to them by this Court, Plaintiffs seek complete and exclusive control, possession, and custody of the CD Proceeds received by the Barnes Defendants.

44.    Plaintiffs were only able to discover the fraudulent nature of the above-referenced transfers after R. Allen Stanford and his accomplices were removed from control of the Stanford entities, and after a time-consuming and extensive review of thousands upon thousands of paper and electronic documents relating to the Stanford entities.   The Court has recognized the necessarily complex nature of such investigations.  *See* , e.g., Doc. 1315 at 11, 14 ("This Court has charged the Receiver with the responsibility of tracking down and collecting ill-gotten funds that properly belong to the Receivership Estate and, ultimately, defrauded investors.  That task has been complicated by the Ponzi scheme's complexity. . . . The Stanford Defendants' Ponzi scheme collected and dissipated billions of dollars over its long existence.  Coupled with the scheme's Byzantine structure, the process of recouping any fraudulently obtained funds necessarily includes weeding through a massive number of individual transactions and any documents and information related to those transactions.").  Moreover, the Committee could not have been aware of any of the transactions involving CD Proceeds paid to Suarez until after its formation on August 10, 2010, at the earliest.   Thus, the discovery rule and equitable tolling principles apply to any applicable limitations period.  *See* , *e.g.*, *Wing v. Kendrick*, No. 08-CV-01002, 2009 WL 1362383, at *3 (D. Utah May 14, 2009); *Quilling v. Cristell*, No. 304CV252, 2006 WL 316981, at *6 (W.D.N.C. Feb. 29, 2006); *See   also* TEX. BUS. & COMM. CODE ANN. § 24.010(a)(1) (claims may be brought either within four years of the transfer or "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant").

Plaintiffs' First Amended Complaint
Against Ben Barnes and Ben Barnes Group, L.P.

14

45.     The Stanford Parties, who orchestrated the Ponzi scheme, transferred the CD Proceeds to the Barnes Defendants with actual intent to hinder, delay, or defraud their creditors. Plaintiffs are, therefore, entitled to disgorgement of all CD Proceeds fraudulently transferred to the Barnes Defendants. Pursuant to the equity powers of this Court, Plaintiffs seek an order that: (a) CD Proceeds received directly or indirectly by the Barnes Defendants were fraudulent transfers under applicable law; (b) CD Proceeds received directly or indirectly by the Barnes Defendants are property of the Receivership Estate held pursuant to a constructive trust for the benefit of the Receivership Estate; (c) the Barnes Defendants are liable to the Plaintiffs for an amount equaling the amount of CD Proceeds they directly or indirectly received; and (d) awards attorneys' fees, costs, and interest to the Plaintiffs.

## PRAYER

46.     The Receiver respectfully requests an Order providing that:

(a)   CD Proceeds received directly or indirectly by the Barnes Defendants were fraudulent transfers under applicable law;

(b)   CD Proceeds received directly or indirectly by the Barnes Defendants are property of the Receivership Estate held pursuant to a constructive trust for the benefit of the Receivership Estate;

(c)   The Barnes Defendants are liable to the Plaintiffs for an amount equaling the amount of CD Proceeds they directly or indirectly received; and

(d)   The Receiver is entitled to an award of reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

(e)   The Court grants such other and further relief as the Court deems proper under the circumstances.

Dated:  June 18, 2012                          Respectfully submitted,

                                               By:  /s/ Peter D. Morgenstern
                                                    Peter D. Morgenstern

                                               BUTZEL LONG, PC
                                               Peter D. Morgenstern (admitted pro hac vice)
                                               morgenstern@butzel.com
                                               380 Madison Avenue, 22nd Floor
                                               New York, New York 100217
                                               (212) 818-1110
                                               (212) 818-0494 (Facsimile)

                                               ATTORNEYS FOR THE OFFICIAL STANFORD
                                               INVESTORS COMMITTEE


                                               STRASBURGER & PRICE, LLP
                                               Edward F. Valdespino
                                               Texas Bar No. 20424700
                                               Edward.valdespino@strasburger.com
                                               300 Convent St., Suite 900
                                               San Antonio, Texas 78205
                                               (210) 250-6061
                                               (210) 258-2703 (Facsimile)

                                               ATTORNEYS FOR THE OFFICIAL STANFORD
                                               INVESTORS COMMITTEE


                                               CASTILLO SNYDER, P.C.
                                               Edward C. Snyder
                                               Texas Bar No. 00791699
                                               esnyder@casnlaw.com
                                               Bank of America Plaza, Suite 1020
                                               300 Convent Street
                                               San Antonio, Texas 78205
                                               (210) 630-4200
                                               (210) 630-4210 (Facsimile)

                                               ATTORNEYS FOR THE OFFICIAL STANFORD
                                               INVESTORS COMMITTEE


                                               NELIGAN FOLEY, LLP
                                               Nicholas A. Foley

Texas State Bar No. 07208620
nfloey@neliganlaw.com
Douglas J. Buncher
Texas State Bar No. 03342700
dbuncher@neliganlaw.com
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
(214) 840-5320
(214) 840-5301 (Facsimile)

**ATTORNEYS FOR THE OFFICIAL STANFORD
INVESTORS COMMITTEE**


**BAKER BOTTS L.L.P.**
Kevin M. Sadler
Texas Bar No. 17512450
kevin.sadler@bakerbotts.com
Scott D. Powers
Texas Bar No. 24027746
scott.powers@bakerbotts.com
1500 San Jacinto Center
98 San Jacinto Blvd.
Austin, Texas 78701-4039
(512) 322-2500
(512) 322-2501 (Facsimile)

Timothy S. Durst
Texas Bar No. 00786924
tim.durst@bakerbotts.com
2001 Ross Avenue
Dallas, Texas 75201
(214) 953-6500
(214) 953-6503 (Facsimile)


**ATTORNEYS FOR RECEIVER RALPH S. JANVEY**

## CERTIFICATE OF SERVICE

On June 18, 2012, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I will serve Ben Barnes and Ben Barnes Group, L.P. individually or through their counsel of record, electronically, or by other means authorized by the Court or the Federal Rules of Civil Procedure.

/s/ Peter D. Morgenstern
Peter D. Morgenstern