UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., *et al.* <br><br> Plaintiff, <br><br> v. <br><br> BEN BARNES and BEN BARNES GROUP, L.P. <br><br> Defendants. <br><br> BEN BARNES GROUP, L.P. <br><br> Third-Party Plaintiff <br><br> v. <br><br> Capitol Counsel, LLC, *et al.* <br><br> Third-Party Defendants. | Civil Action No. <br> 3:10-cv-527 |

**THIRD-PARTY DEFENDANTS CAPITOL COUNSEL, LLC, CAUTHEN FORBES & WILLIAMS, LLC AND ROBERT MITCHELL DELK'S BRIEF IN SUPPORT OF MOTION TO DISMISS RESTATED THIRD-PARTY COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(B)(6)**

COMES NOW Third-Party Defendants Capitol Counsel, LLC, Cauthen Forbes & Williams, LLC and Robert Mitchell Delk (the "Third-Party Defendants"), by and through Counsel, and in support of their Motion to Dismiss the Restated Third-Party Complaint ("Third-Party Complaint") for failure to state a claim pursuant to Fed. R. Civ. P. 12(B)(6) states as follows.

**STATEMENT OF FACTS**

Capitol Counsel, LLC, Cauthen Forbes & Williams, LLC
and Robert Mitchell Delk's Brief In Support Of Motion To Dismiss Restated Third-Party Complaint       1

The Plaintiffs have alleged in their Amended Complaint that all of the monies that the Defendant/Third-Party Plaintiff BBG, L.P. ("BBG, L.P." or "Third-Party Plaintiff") received from the Stanford Parties (as defined in the Amended Complaint) constituted fraudulent transfers.  Plaintiffs further allege that Third-Party Plaintiff cannot establish that it provided reasonably equivalent value, and did so in good faith, in exchange for the allegedly fraudulent transfers received from the Stanford Parties.  Accordingly, the Amended Complaint seeks to recoup and/or compensation from BBG, L.P. in the amount that was allegedly fraudulent transferred to it from the Stanford Parties.

BBG, L.P. denies Plaintiff's allegations set forth in the Amended Complaint. *See* Paragraph 78 of the Third-Party Complaint.  Paragraph 69 of the Third-Party Complaint alleges that BBG, L.P. began "an arms-length relationship with various" Stanford Entities and that its "arms-length relationship with the Stanford Entities continued until approximately March 2009." The Third-Party Complaint further acknowledges that the BBG, L.P. "engaged" the Third-Party Defendants to "specifically provide consulting services on matters for the Stanford Entities." *See* Paragraph 71 of the Third-Party Complaint.  Further, the Third-Party Complaint admits that the Third-Party Plaintiff "paid directly" to the Third-Party Defendants "for their consulting services." *Id.*

BBG, L.P.'s theory of recovery against the Third-Party Defendants is set forth in Paragraph 79 of the Third-Party Complaint which alleges that, "In the event that Plaintiffs are able to prevail on their claims against BBG, L.P., then BBG, L.P. seeks contribution/reimbursement from [the Third-Party Defendants] for money BBG, L.P. passed-through to the [Third-Party Defendants] as a result of the consulting work they performed for the Stanford Entities."

**STANDARD OF REVIEW**

Fed. R. Civ. P. Rule 12(B)(6) authorizes the dismissal of a Third-Party Complaint for "failure to state a claim upon which relief can be granted."  The Court will only look to the facts stated in the Third-Party Complaint and in documents attached or incorporated into the Complaint.  Fed. R. Civ. P. Rule 12(B)(6).  The Court will evaluate the sufficiency of the pleading by "accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

To survive the Motion BBG, L.P.  must have plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.; see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level").

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard set forth in Fed. R. Civ. P. Rule Rule 8(a)(2) does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Although the

Court will accept well-pleaded facts as true it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Id.*

## ARGUMENT

The Third-Party Complaint fails to state a claim upon which relief can be granted. In summary the Third-Party Complaint fails to set forth sufficient facts and legal basis on which to impose contribution against the Third-Party Defendants because it does not recognize the difference between the relationship of BBG, L.P. and the Stanford Entities and the Third-Party Plaintiff and the Stanford Entities.

I. <u>The Ponzi Scheme Presumption Of Fraud Does Not Apply To The Third-Party Defendants</u>

Under the Uniform Fraudulent Transfer Act ("UFTA"), "transfers made from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi scheme is, as a matter of law, in-solvent from inception." *Quilling v. Schonsky*, 247 Fed. Appx. 583; 2007 U.S. App. LEXIS 22274; *see also Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006). The Amended Complaint seeks recovery from BBG, L.P. on the grounds that the transfer from the Stanford Entities to BBG, L.P. was fraudulent because it originated from a Ponzi scheme.

The Third-Party Defendants are not similarly situated as BBG, L.P. The Third-Party Defendants had **no direct relationship** with the Stanford Entities. The Third-Party Complaint admits that the Third-Party Plaintiff "engaged" the Third-Party Defendants to "specifically provide consulting services on matters for the Stanford Entities." *See* Paragraph 71 of the Third-Party Complaint. The Third-Party Defendants relationship was with BBG, L.P., although it was performing work for BBG, L.P. that would ultimately benefit the Stanford Entities. The Third-Party Defendants had privity of contract and a direct relationship with BBG, L.P. The Third-Party Defendants had no direct relationship with the Stanford Entities.

Further, the Third-Party Complaint admits that BBG, L.P. "paid directly" to the Third-Party Defendants "for their consulting services." *See* Paragraph 72 of the Third-Party Complaint.  Unlike the monies received by BBG, L.P., the Third-Party Defendants never received any transfer from the Ponzi scheme.  The presumptive intent to defraud associated with the Ponzi scheme is not applicable to the Third-Party Defendants.

The Third-Party Complaint makes no allegation that the Third-Party Defendants were insiders, actively participated in the Ponzi scheme, or even had any knowledge of the Ponzi scheme.  In fact, the Third-Party Complaint alleges that BBG, L.P. began "an arms-length relationship with various" Stanford Entities and that its "arms-length relationship with the Stanford Entities continued until approximately March 2009." *See* Paragraph 69 of the Third-Party Complaint.  The Third-Party Plaintiff's Answer to the Amended Complaint pleads that "the Stanford Parties represented themselves to BBG, L.P. to be legitimate businesses with no suggestion that they were involved in illegal or improper activities" and denies that BBG, L.P. "had any knowledge whatsoever of any alleged 'Ponzi scheme' or any 'victims' of said alleged 'Ponzi scheme'." *See* Paragraphs 4 and 6 of the Answer to the Amended Complaint.

The Third-Party Defendants had an arms-length transaction with BBG, L.P. and had no direct relationship with the Stanford Entities.  Under such circumstances there is no voidable or fraudulent transfer under the UFTA, which states in pertinent:

> Sec. 24.005.  TRANSFERS FRAUDULENT AS TO PRESENT AND FUTURE CREDITORS.  (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1)  with actual intent to hinder, delay, or defraud any creditor of the debtor;  or
> (2)  without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

              A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

              (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

The Third-Party Complaint fails to meet any of the requisite elements for a fraudulent transfer under the UFTA. First, the debtor for the transfer in question is not the Stanford Entities; rather it is BBG, L.P. The Third-Party Complaint admits that BBG, L.P. "engaged" the Third-Party Defendants and "directly paid" them. *See* Paragraphs 71 and 72 of the Third-Party Complaint. Second, there is no allegation that BBG, L.P. had any intent to hinder, delay, or defraud the Third-Party Defendants. In fact, the Third-Party Complaint alleges the opposite; that BBG, L.P. was engaged in an "arms-length relationship" with the Stanford Entities and had no knowledge of the Ponzi scheme. *See* Paragraphs 69 and 78 of the Third-Party Complaint. Third, the Third-Party Complaint does not allege that the Third Party Defendants failed to provide reasonably equivalent value in exchange for their services to BBG, L.P. Rather, the Third-Party Complaint admits that the Third-Party Defendants provided and were paid for the services requested. Fourth, there is no allegation that at the time of the transfer from BBG, L.P. to the Third-Party Defendants that BBG, L.P. was insolvent or was made insolvent by the transaction.

Pursuant to Section 24.009 of the UFTA a transfer is "not voidable under Section 24.005(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or oblige." The Third-Party Defendants were a subsequent transferee and therefore the transfers from BBG, L.P. to the Third-Party Defendants are not voidable. Likewise, there is not allegation that the Third-Party Defendants did not act in good faith or provide reasonably equivalent value to BBG, L.P.

**Capitol Counsel, LLC, Cauthen Forbes & Williams, LLC
and Robert Mitchell Delk's Brief In Support Of Motion To Dismiss Restated Third-Party Complaint**     6

There is no direct relationship or privity between the Stanford Entities and the Third-Party Defendants. "The rule is that the maker of the fraudulent conveyance and all those in privity with him—which certainly includes the corporations—are bound by it." *Scholes v. Lehmann*, 56 F.3d 750, 754 (1995). The reason for this rule on privity is that "the wrongdoer must not be allowed to profit from his wrong by recovering property that he had parted with in order to thwart his creditors." *Id.* There is no privity in this case. The Third-Party Defendants legal relationship was with BBG, L.P. not the Stanford Entities. The Stanford Entities are not profiting from their Ponzi scheme if BBG, L.P. recovers monies from the Third Party Defendants.

The allegation in the Third-Party Complaint that BBG, L.P. was "acting in part as a payment clearinghouse" is not sufficient to establish any direct relationship between the Third-Party Defendants and the Stanford Entities that would result in a presumptive finding of fraud. BBG, L.P. "engaged", "paid directly" and "relied on the assistance" of the Third-Party Defendants. *See* Paragraphs 71 and 72 of the Third-Party Complaint. The requirement of privity and a direct relationship is necessary to prevent a slippery slope of lawsuits that would entangle fringe and tangential businesses into the legal actions to recover assets after a Ponzi scheme is uncovered. If recovery is permitted against the Third-Party Defendants then they could seek recovery against service providers they engaged such as other consultants, independent contractors and service providers who could then seek recovery against their consultants, independent contractors and service providers and so on.

The Third-Party Complaint fails to assert a plausible cause of action against the Third-Party Defendants because they had no relationship with the Ponzi scheme. They provided honest services, with no knowledge of the Ponzi scheme, to a third party (BBG, L.P.) for reasonable

equivalent value. The mere fact that the company, BBG, L.P., which retained the services of the Third-Party Defendants, received funds from the Stanford Entities is legally insufficient to sustain a claim for contribution/reimbursement.

II.  The Third-Party Complaint Fails To Set Forth Any Legally Cognizable Theory Or Claim That Would Allow Recovery Against The Third-Party Defendants

Fed. R. Civ. P. Rule 12(B)(6) requires that the Third-Party Complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." The Third-Party Complaint is wholly devoid of any legally cognizable theory or claim that would allow recovery against the Third-Party Defendants. BBG, L.P.'s theory of recovery is set forth in Paragraph 79 of the Third-Party Complaint which alleges that, "In the event that Plaintiffs are able to prevail on their claims against BBG, L.P., then BBG, L.P. seeks contribution/reimbursement from [the Third-Party Defendants] for money BB, L.P. passed-through to the [Third-Party Defendants] as a result of the consulting work they performed for the Stanford Entities." Said allegations and pleadings are wholly devoid of any legal claim, basis or theory under which the Third-Party Plaintiff would be entitled to contribution/reimbursement.

PRAYER FOR RELIEF

WHEREFORE the Third-Party Defendants Capitol Counsel, LLC, Cauthen Forbes & Williams, LLC and Robert Mitchell Delk respectfully pray that this honorable Court grant their Motion to Dismiss Pursuant to Fed. R. Civ. P. Rule 12(B)(6) and dismiss the Third-Party Complaint with prejudice and award any and all such other relief as is in the interests of justice, including but not limited to attorney fees and costs.

Respectfully Submitted,

NEALON & ASSOCIATES, P.C.


By: /s/ Jay Ian Igiel, Esq.
    Jay Ian Igiel, Esq.
    Virginia Bar No. 65576
    jigiel@nealon.com
    Robert B. Nealon, Esq.
    Virginia Bar No. 23096
    rbnealon@nealon.com
    119 North Henry Street
    Alexandria, Virginia 22314
    703-684-5755
    703-684-0153 (Facsimile)

Attorneys for Capitol Counsel, LLC,
Cauthen Forbes & Williams, LLC
and Robert Mitchell Delk

## CERTIFICATE OF SERVICE

I hereby certify that on November 27 2012, I electronically filed the foregoing document with the Clerk of the Court for the North District of Texas, Dallas Division, by using the CM/ECF system which will send notification to all CM/ECF participants and counsel of record.

      /s/ Jay Ian Igiel, Esq.
    Jay Ian Igiel, Esq.